UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
Case No.: 22-11782

MARBELLA AT SPANISH WELLS 1
CONDOMINIUM ASSOCIATION, INC.

*Plaintiff/Appellee,*

v.

EMPIRE INDEMNITY INSURANCE COMPANY

*Defendant/Appellant.*

---

**BRIEF OF APPELLANT
EMPIRE INDEMNITY INSURANCE COMPANY**

---

On Appeal from the
United States District Court for the Middle District of Florida
No. 2:21-cv-00641-SPC-MRM

BUTLER WEIHMULLER KATZ
CRAIG LLP

J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN LEE GONZÁLEZ-RIVERA, ESQ.
Florida Bar No.: 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone:  (813) 281-1900
Facsimile:  (813) 281-0900

*Counsel for Empire Indemnity Insurance Company*

Marbella At Spanish Wells I Condo. Ass'n., Inc. v. Empire Indemnity Insurance
Company, Case No. 22-11782

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rules of Appellate Procedure 26.1 and 28(a)(1), and 11th
Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant, Empire Indemnity Insurance
Company, files this Certificate of Interested Persons and Corporate Disclosure
Statement.   The following is a full and complete list of all attorneys, persons,
associations of persons, firms, partnerships, or corporations that have an interest in
the outcome of this appeal.

1.     Butler Weihmuller Katz Craig LLP – Counsel for Appellant

2.     J. Pablo Caceres – Appellate Counsel for Appellant

3.     Christian Lee González-Rivera – Appellate Counsel for Appellant

4.     Empire Indemnity Insurance Company – Appellant

5.     Marbella at Spanish Wells 1 Condominium Association, Inc. –
       Appellee

6.     Robert Gallagher – Counsel for Appellee

7.     Ugo Colella – Appellate Counsel for Appellee

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

Marbella At Spanish Wells I Condo. Ass'n., Inc. v. Empire Indemnity Insurance
Company, Case No. 22-11782

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rule 26.1-1, Appellant, Empire Indemnity Insurance Company, makes the following Corporate Disclosure:

Empire Indemnity Insurance Company is a wholly owned subsidiary of Empire Fire and Marine Insurance Company, an Illinois corporation. Empire Fire and Marine Insurance Company is a subsidiary of Zurich American Insurance Company, a New York corporation. Zurich American Insurance Company is a wholly owned subsidiary of Zurich Holding Company of America, Inc., a Delaware corporation. Zurich Holding Company of America, Inc. is wholly owned by Zurich Insurance Company Ltd., a Swiss corporation. Zurich Insurance Company Ltd. is directly owned by Zurich Insurance Group Ltd., a Swiss corporation. Zurich Insurance Group Ltd. is the only publicly traded parent company, with a listing on the Swiss stock exchange, and a further trading of American Depositary Receipts (Stock Ticker: ZURVY).

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

## STATEMENT REGARDING ORAL ARGUMENT

Because the issues are of first impression and their resolution impacts the enforcement of insurance appraisal provisions state and circuit-wide, Empire requests oral argument to assist the Court under Fed. R. App. P. 34(a)(1) and 11th Cir. R. 28-1(c).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT ....................................................C-2

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS ........................................................................ iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE

JURISDICTION...................................................................... xxii

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE....................................................................4

I.      Introduction....................................................................................4

II.     Historical and Legal Background ....................................................5

        A.      Growth of Procedural Disarray in Compelling Appraisal ...................5

        B.      The Novel Process Defies Historical Practice ....................................10

III.    Factual and Procedural Background..............................................15

        A.      The Property and the Policy ...................................................15

        B.      Empire Investigates and Adjusts the Claim ........................................17

        C.      Marbella Sues Empire ........................................................18

STATEMENT OF THE STANDARD AND SCOPE OF REVIEW ......................21

SUMMARY OF THE ARGUMENT ....................................................22

ARGUMENT ..................................................................................24

I.      Compelling Appraisal without a Showing of Specific Performance
        was Procedurally Improper..............................................................24

II.     Compelling Appraisal Absent Summary Judgment that Empire
        Breached the Provision Constituted a Grant of Unpled Relief
        Redressing an Un-adjudicated Wrong..........................................35

III.    The District Court Erroneously Compelled Appraisal of a
        Supplemental Windows Claim Wholly Denied by Empire..........................38

IV.     The District Court Refused Imparting Guidelines for Appraisal Based
        on the Erroneous Legal Conclusion that It Lacked Such Discretion ...........43

        A.      The District Court Failed to Review the Issue *De Novo* ....................43

        B.      The District Court Improperly Refused to Impart Appraisal
                Guidelines..........................................................................44

CONCLUSION .............................................................................51

CERTIFICATE OF COMPLIANCE ....................................................52

CERTIFICATE OF SERVICE ............................................................53

# TABLE OF CITATIONS

**Cases**

*Alabama v. U.S. Army Corps of Engineers,*

424 F.3d 1117 (11th Cir. 2005) .......................................................43

*Allegro at Boynton Beach, L.L.C. v. Pearson*,

287 So. 3d 592 (Fla. 4th DCA 2019).............................................36

*Allen v. Amica Mutual Ins. Co.*,

No. 1:12-cv-49, 2013 WL 11927705 (N.D. Ga. Feb. 28, 2013) ..................48

*Allen v. USAA Cas. Ins. Co.*,

790 F.3d 1274 (11th Cir. 2015) .......................................................48

*Allstate Insurance Company v. Suarez,*

833 So. 2d 762 (Fla. 2002) ..................................................... passim

*Am. Storage Centers v. Safeco Ins. Co. of Am.*,

651 F.Supp.2d 718 (N.D. Ohio 2009) ............................................46

*American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo.*

*Ass'n, Inc.*,

306 So. 3d 1238 (Fla. 2d DCA 2020)............................................32

*American Coastal Ins. Co. v. Ironwood, Inc.*,

330 So. 3d 570 (Fla. 2d DCA 2021)...................................... 39, 41

*Anderson v. Auto-Owners Ins. Co.*,

172 F.3d 767 (11th Cir. 1999) .......................................................33

iv

*Auto-Owners Ins. Co. v. Anderson*,

    756 So. 2d 29 (Fla. 2000) ..............................................................................33

*Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*,

    129 F.Supp.3d 1150 (D. Colo. 2015) ..................................................... 45, 48

*Baldwin Realty Group Inc. v. Scottsdale Ins. Co.*,

    No. 6:18-cv-785-Or1-41DCI, 2018 WL 5221228 (M.D. Fla. Oct. 22,

    2018) ..............................................................................................................42

*Battles, Inc. v. Nationwide General Ins. Co.*,

    No. 3:19-cv-13-DML-DCP, 2020 WL 6365513 (E.D. Tenn. March

    10, 2020) .............................................................................................. passim

*Bettor v. Esurance Property and Casualty Ins. Co.*,

    No.: 18-61860-CIV-MORENO, 2019 WL 3408900 (S.D. Fla. June

    17, 2019) ........................................................................................................42

*Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

    2013 WL 2646828 (S.D. Fla. June 12, 2013)..........................................8, 25

*Blue-Grace Logistics LLC v. Fahey,*

    *340 F.R.D. 460 (M.D. Fla. 2022)* ...............................................................27

*Bonafonte v. Lexington Ins. Co.*,

    No. 08-cv-21062-CIV, 2008 WL 2705437 (S.D. Fla. July 9, 2008)............47

*Burchell v. Marsh*,

    58 U.S. 344 (1854)...........................................................................45

*Burgess v. Miller*,

    492 F.Supp. 1284 (N.D. Fla. 1980) ...............................................44

*Calzadilla v. Scottsdale Ins. Co.,*

    No. 18-25424, 2019 WL 2245518 (S.D. Fla. April 10, 2019) .....................42

*Castigliano v. O'Connor*,

    911 So. 2d 145 (Fla. 3d DCA 2005)...........................................27

*Castillo at Tiburon Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.,*

    No. 2:20-cv-468,, 2021 WL 4438370 (M.D. Fla. Sept. 28, 2021)... 29, 42, 47

*Cedant Corp. v. Forbes*,

    70 F.Supp.2d 339 (S.D.N.Y. 1999) ...............................................11

*Chambers v. Nasco, Inc.*,

    501 U.S. 32 (1991)...........................................................................44

*CIGNA Ins. Co. v. Didimoi Prop. Holdings, N.V.,*

    110 F.Supp.2d 259 (D. Del. 2000) ...............................................46

*Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*,

    5 So. 3d 709 (Fla. 3d DCA 2009)...................................... 14, 32, 33

*Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*,

    117 So. 3d 1226 (Fla. 3d DCA 2013)......................... 32, 33, 34, 37

vi

*City of Omaha v. Omaha Water Co.*,

    218 U.S. 180 (1910)........................................................................31

*Collins v. Collins*,

    53 Eng. Rep. 916 (1858) (same)................................................31

*Columbia Cas. Co. v. Southern Flapjacks, Inc.*,

    868 F.2d 1217 (11th Cir. 1989) ................................................31

*Compare Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-00136, 2020 WL 5973177 (M.D. Fla. Sept. 2, 2020)................9

*Coral Reef Metro, LLC v. Scottsdale Ins. Co.,*

    2019 WL 700114 (M.D. Fla. Feb. 20, 2019)................................................42

*Coral Reef Metro, LLC v. Scottsdale Ins. Co.*,

    No. 2:18-cv-460, 2019 WL 721286 (M.D. Fla. Jan. 30, 2019)............. 46, 47

*Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-00136, 2021 WL 2003007 (M.D. Fla. May 19, 2021)... 9, 25, 37

*Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    No. 2:20-cv-136, 2022 WL 780950 (M.D. Fla. Mar. 15, 2022) ...................37

*Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*,

    No. 10-61987, 2013 WL 1191413 (S.D. Fla. Mar. 22, 2013).......................35

*Evanston Ins. Co. v. Cogswell Properties, LLC*,

    683 F.3d 684 (6th Cir. 2012) ........................................................13

*Ferrero v. Assoc. Materials Inc.*,

    923 F.2d 1441 (11th Cir. 1991) ............................................................ 10, 26

*Fireman's Fund Ins. Co. v. Steele Street Limited II*,

    2022 WL 39392 (10th Cir. Jan. 5, 2022) ................................................ 21, 28

*Fla. Gaming Corp. v. Affiliated FM Ins. Co.*,

    2008 WL 11407210 (S.D. Fla. Apr. 21, 2008) ......................................... 9, 33

*Fla. Ins. Guaranty Ass'n v. Olympus Ass'n*,

    34 So.3d 791 (Fla. 4th DCA 2010) ......................................................... 32, 47

*Ford v. American Security Ins. Co.*,

    No. 1:19-cv-20223-JLK, 2019 WL 6609239 (S.D. Fla. Dec. 5, 2019) ......... 48

*Fouladi v. Geovera Specialty Ins. Co.*,

    No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039 (M.D. Fla. April 30,

    2018) ............................................................................................................ 33

*Gauche v. London & L. Ins. Co.*,

    10 F. 347 (E.D. La. 1881) ............................................................................ 11

*Georgia Advocacy Office v. Jackson*,

    4 F.4th 1200 (11th Cir. 2021) ................................................................ 27, 43

*Gray Ins. Co. v. Fla. Paving & Trucking, Inc.*,

    2014 WL 12776172 (S.D. Fla. Feb. 10, 2014) ............................................ 28

*Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n, Inc.*,

    No. 21-cv-21873, 2022 WL 1681883 (S.D. Fla. May 26, 2022) .................36

*Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*,

    No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599 (S.D. Fla.

    June 9, 2020)...............................................................................................33

*Hale v. Johnson,*

    845 F.3d 224 (6th Cir. 2016) ................................................................ 30, 39

*Hanover Fire Ins. Co. v. Lewis*,

    28 Fla. 209 (Fla. 1891) ......................................................................... 11, 45

*Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*,

    1 N.Y.2d 534 (N.Y. 1956) ...........................................................................12

*Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*,

    284 U.S. 151 (1931).......................................................................................44

*Harris v. Equifax Information Services, LLC,*

    No. 8:20-cv-1770, 2020 WL 6545977 (M.D. Fla. Nov. 6, 2020) ................47

*Hayes v. Allstate Ins. Co.*,

    722 F.2d 1332 (7th Cir. 1983) ......................................................... 21, 26, 28

*Hepburn et al. v. Auld. et al.*,

    5 Cranch 262 (1809) .....................................................................................10

*Heritage Prop. & Cas. Ins. Co. v. Veranda I at Heritage Links Ass'n, Inc.*,

    334 So. 3d 373 (Fla. 2d DCA 2022)........................................................ 39, 41

*Holmes v. Richet*,

    56 Cal. 307, 313 (Cal. 1880) ..........................................................................11

*Hozlock v. Donegal Companies/Donegal Mut. Ins. Co.*,

    745 A.2d 1261 (Pa. Super. Ct. 2000) ...........................................................45

*Indian Harbor Insurance Company v. International Studio Apartments, Inc.*,

    No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754 (S.D.

    Fla. Sept. 22, 2009)........................................................................................36

*Intervest Constr. Of Jax, Inc. v. Gen. Fid. Ins. Co.*,

    133 So. 3d 494 (Fla. 2014) ............................................................................47

*Itasca Paper Co. v. Niagara Fire Ins. Co.*,

    220 N.W. 425 (Minn. 1928) ..........................................................................45

*J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*,

    769 Fed. App'x 698 (11th Cir. 2019)......................................... 21, 31, 34, 43

*J.W. Mariner Corp. v. Zurich American Ins. Co.*,

    No. 5:20-cv-143, 2021 WL 4958099 (N.D. Fla. July 7, 2021)....................36

*Jacobs v. Nationwide Mut. Fire Ins. Co.*,

    236 F.3d 1282 (11th Cir. 2001) ............................................................. 21, 35

*Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*,

    No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260 (S.D. Fla.

    June 16, 2011).................................................................................33

*JM Walker LLC v. Acadia Ins. Co.*,

    356 Fed. App'x 744 (5th Cir. 2009) ............................................21

*Johnson v. Nationwide Mut. Ins. Co.*,

    828 So. 2d 1021 (Fla. 2002) .............................................. 7, 8, 38

*La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*,

    733 F.Supp.2d 1332 (S.D. Fla. 2010)................................. 25, 27

*Liberty American Ins. Co. v. Kennedy*,

    890 So. 2d 539 (Fla. 2d DCA 2005)........................... 9, 32, 33, 34

*Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*,

    881 F.3d 1323 (Fed. Cir. 2018) ....................................................35

*Mapleton Processing, Inc. v. Society Ins. Co.*,

    No. C12-4083-LTS, 2013 WL 3467190 (N.D. Iowa July 10, 2013) .... passim

*MaxLite, Inc. v. ATG Electronics, Inc.*,

    No. 15-1116, 2019 WL 3283077 (D. N.J. July 22, 2019)............................27

*McCoy v. American Family Mut. Ins. Co.*,

    189 F.Supp.3d 896 (D. Minn. 2016) ...................................... 25, 36

xi

*McMahan v. Toto*,

    311 F.3d 1077 (11th Cir. 2002) ................................................................. 31, 33

*Metropolitan Casualty Ins. Co. v. SFR Services L.L.C.,*

    2020 WL 4207375 (M.D. Fla. July 22, 2020) ................................................42

*Michelle Condominium, Inc. v. Certain Underwriters at Lloyd's, London,*

    2021 WL 4244899 (S.D. Fla. Sept. 17, 2021) ................................................42

*Milligan v. CCC Information Services, Inc.*,

    920 F.3d 146 (2d Cir. 2019) ........................................................................21

*Nygaard v. Property Damage Appraisers, Inc.*,

    779 Fed. App'x 474 (9th Cir. 2019) .............................................................21

*Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*,

    443 P.3d 47 (Col. 2019) ................................................................................45

*Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.,*

    No. 13-80741, 2014 WL 12461372 (S.D. Fla. Nov. 7, 2014) ..................9, 36

*Parents Involved in Community Schools v. Seattle School Dist. No. 1,*

    551 U.S. 701 (2007) ......................................................................................30

*Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*,

    No. 10-23965, 2011 WL 13099891 (S.D. Fla. Sept. 11, 2011) ............. 25, 27

*Penn Central Corp. v. Consolidated Rail Corp.*,

    56 N.Y.2d 120 (N.Y. Ct. App. 1982) ............................................................12

*People's Trust Ins. Co. v. Fernandez*,

    317 So. 3d 207 (Fla. 3d DCA 2021)...............................................................24

*People's Trust Ins. Co. v. Nowroozpour*,

    277 So. 3d 135 (Fla. 4th DCA 2019)................................................ 14, 24, 30

*People's Trust Ins. Co. v. Slavin*,

    No. 4D21-3025, 2022 WL 1021043 (Fla. 4th DCA April 6, 2022)..............35

*People's Trust Ins. Co. v. Vidal*,

    305 So. 3d 710 (Fla. 3d DCA 2020)...............................................................24

*Pernas v. Scottsdale Ins. Co.*,

    No. 1:15-cv-21506, 2016 WL 471949 (S.D. Fla. Feb. 8, 2016) ............ 35, 39

*Petrello v. White*,

    533 F.3d 110 (2d Cir. 2008) ...........................................................................28

*Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,

    2022 WL 1085541 (M.D. Fla. Jan. 26, 2022) ...........................................8, 37

*Providence Washington Ins. Co. v. Gulinson*,

    215 P. 154 (Col. 1923)....................................................................................45

*Red Cross Line v. Atlantic Fruit Co.*,

    264 U.S. 109 (1924).......................................................................................10

*Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 3:19-cv-1490, 2020 WL 5948314 (M.D. Fla. July 17, 2020) ...............25

*Rodriguez v. Powell,*

    853 Fed.App'x 613 (11th Cir. 2021) ............................................................21

*Rogers v. State Farm Fire & Cas. Co.*,

    984 So. 2d 382 (Ala. 2007)..............................................................................7

*Ruckdeschel v. People's Trust Ins. Co.*,

    327 So. 3d 311 (Fla. 4th DCA 2021)............................................................24

*Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249 (Ohio

    1953) ..............................................................................................................11

*Safepoint Ins. Co. v. Hallet*,

    No. 5D20-206, 2021 WL 2599656 (Fla. 5th DCA, June 25, 2021)..............32

Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,

    390 F.3d 684 (10th Cir. 2004) ......................................................................13

*Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,

    No. 20-CV-10063-JEM, 2020 WL 6875747 (S.D. Fla. Oct. 26, 2020)........25

*Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*,

    No. 05-14362-Civ, 2009 WL 790120 (S.D. Fla. Mar. 24, 2009).................33

*Sardinas v. Miami Veterinary Specialists, P.A.*,

    No. 1:20-cv-22987, 2020 WL 7241364 (S.D. Fla. Dec. 8, 2020)................28

*Sauer v. Xerox Corp.*,

    17 F.Supp.2d 193 (W.D. N.Y. 1988).............................................................26

*SB Holdings I, LLC v. Indian Harbor Ins. Co.*,

    No. 6:19-cv-668-Or1-40DCI, 2020 WL 1674326 (M.D. Fla. Jan. 9,

    2020) ...................................................................................................42

*Smith v. Organization of Foster Families for Equality and Reform*,

    431 U.S. 816 (1977)...........................................................................44

*Sos v. State Farm Mutual Auto. Ins. Co.*,

    396 F.Supp.3d 1074 (M.D. Fla. 2019) ..............................................48

*St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*,

    No. 13-1977, 2013 WL 6190400 (D. Minn. 2016) ............................ 25, 36

*St. Paul Fire & Marine Ins. Co. v. Walsenburg land & Development Co.*,

    278 P. 602 (Col. 1929).......................................................................45

*State Farm Fire & Cas. Co. v. Harper*,

    No. 3:20-cv-00856, 2022 WL 989088 (M.D. Tenn. Mar. 31, 2022) ...........43

*State Farm Fla. Ins. Co. v. Gonzalez*,

    76 So. 3d 34 (Fla. 3d DCA 2011)......................................................32

*Stillman v. Travelers Ins. Co.*,

    88 F.3d 911 (11th Cir. 1996) .............................................................36

*Sun Ins. Office, Ltd. v. Clay*,

    133 So. 2d 735 (Fla. 1961) ................................................................33

*Supreme Fuels Trading FZE v. Sargeant*,

    689 F.3d 1244 (11th Cir. 2012) ......................................................28

*Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*,

    981 F.Supp. 581 (N.D. Iowa 1997) ................................................46

*Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*,

    250 F. Supp. 2d 1357 (M.D. Fla. 2003) ............................. 9, 31, 32

*Todd v. Hyzer*,

    18 So. 888 (Fla. 1944) ....................................................................25

*Trinidad v. Fla. Peninsula Ins. Co.*,

    121 So. 3d 433 (Fla. 2013) .............................................................48

*Tscheider v. Biddle*,

    24 F. Cas. 253 (E.D. Miss. 1877) ..................................................11

*Twelfth Ave. Investments, Inc. v. Smith*,

    979 So. 2d 1216 (Fla. 4th DCA 2008) ............................................24

*United States v. Carrigan*,

    804 F.2d 599 (10th Cir. 1986) ........................................................46

*Vallina v. Mansiana Ocean Residences, LLC*,

    2010 WL 11553422 (S.D. Fla. Oct. 12, 2010) ..............................28

*Vasquez v. Citizens Property Ins. Corp.*,

    304 So. 3d 1280 (Fla. 3d DCA 2020) ............................................48

*Villareal v. Owners Ins. Co.*,

    No. 16-cv-01862, 2016 WL 9735733 (D. Col. Dec. 1, 2016)......................46

*Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*,

    2018 WL 1773407 (D. Colo. April 13, 2018) ...................................... passim

*Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*,

    906 N.W.2d 205 (Iowa Ct. App. July 19, 2017) ...........................................7

*Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*,

    No. 2:19-cv-81, 2019 WL 3852731 (M.D. Fla. Aug. 16, 2019) .......... passim

*Westar Energy, Inc. v. Lake*,

    552 F.3d 1215 (10th Cir. 2009) ....................................................................26

*Western Surety Co. v. PASI of LA, Inc.*,

    334 F.Supp.3d 764 (M.D. La. Sept. 25, 2018) ...................................... 10, 26

*Williams v. Citizen Prop. Ins. Co.*,

    285 So. 3d 334 (Fla. 4th DCA 2019)...........................................................32

*Wingerter v. Chester Quarry Co.*,

    185 F.3d 657 (7th Cir. 1998) .......................................................................21

*Woodward v. Liberty Mut. Ins. Co.*,

    No. 3:09-cv-0228, 2010 WL 1186323 (N.D. Tex. Mar. 26, 2010)...............25

**Statutes**

§ 627.70132(2), Fla. Stat...........................................................................41

## Rules

Fed. R. Civ. P. 56 ..................................................................................4

Fed. R. Civ. P. 56(a).............................................................................37

Fed. R. Civ. P. 65 ......................................................................... passim

Fed. R. Civ. P. 72(b)(3)........................................................................21

## Codes

28 U.S.C. §1292(a)(1)......................................................................1, 28

28 U.S.C. §636(b)(1)(B) .................................................................21, 43

## Other Authorities

112 A.L.R. § 9 (1938)...........................................................................12

15 COUCH ON INSURANCE §209:10 (2021)............................................13

44 A.L.R.2d 850 §1 (1955) ...................................................................11

5 BUS. & COM. LITIG. FED. CTS. § 49:79 (4th ed.2020).........................28

Alfred Hayes, *Specific Performance of Contracts for Arbitration or*

    *Valuation*,

    1 CORNELL L. REV. 225, 225 (1916)................................................12

Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal*

    *Clause—A Critical Analysis: Guidance and Recommendations for*

    *Arizona*, 41 ARIZ. ST. L.J. 403, 413 (2009)....................................13

Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of Insurer Litigation in U.S.*, INSURANCE JOURNAL (April 14, 2021).................6

Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ..................................26

Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1, 2, 4 n.22 (2004) ................................................................... 27, 43

BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022 update) ...........................................................................................6

Charles Edwards, *An Appraisal of the Appraisal Remedy in Property Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022)........................6

David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999) ...................................................................................14

Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021).................................................................6

Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) ...................6

Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT

JTLATRIAL 22, 26 (2009) ...........................................................10

GREGORY DELL ET AL., FLORIDA INSURANCE LAW & PRACTICE §14:8 (2021-

2022 ed.) ................................................................................9

Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of*

*Specific Performance In Real Estate Contracts*, 47 WM. & MARY L.

REV. 697, 701 (2005).................................................................14

Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A*

*Four-Step Program*, 37 U. TOL. L. REV. 931, 931 (2006) .............................6

JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345,

349 (3d ed., 2015)................................................................... passim

Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance*

*Appraisal*,.............................................................................26

Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently*

*Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS.

L. 41, 42 (2004) .............................................................6

MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS:

UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update).....................6

Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1, 11 (1991) .................................................................................. 12

Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 557 (2016) ........................................................................ 27

*Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161, 176 (1934) ....................................................................... 12

Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987) .............................................................. 26

Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG BRIEF 20, 21 (2015) ...................................................... 6, 7

Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 CONN. INS. L.J. 291, 298 (2006-2007) ................................................................................ 13

Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958) ........... 12, 27, 43

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The District Court has original jurisdiction under 28 U.S.C. §1332(a)(1) and this Court has appellate jurisdiction under §1292(a)(1). The order appealed constituted injunctive relief, since it compelled Empire's specific performance of the insurance policy's appraisal provision.

## STATEMENT OF THE ISSUES

All issues involve purely legal questions seeking this Court's first impression. Several have state and circuit-wide impact.

First, Empire appealed from interlocutory orders compelling appraisal under 28 U.S.C. §1292(a)(1). The specific performance of a contract is an interlocutory remedy contemplated by Section 1292(a)(1), if the order's *form* or *substance* comes within the scope of Fed. R. Civ. P. 65. Despite affording injunctive relief in compelling appraisal, the lower court refused to acknowledge doing as much. **Is the form or substance of the order injunctive and, thus, appealable under Section 1292(a)(1)?**[1]

Second, the district court improperly compelled appraisal outside the parameters of specific performance. Florida law regards compelling appraisal a substantive right to specific performance. Federal courts exercise equitable powers in affording such relief through Rule 65. Below, the court failed to do this, compelling appraisal as something *other than* specific performance instead, without the requisite pleading or proof. **May a federal district court compel an insurance appraisal outside its equity jurisdiction under Rule 65?**

---

[1] Empire rests on its forthcoming jurisdictional brief in answering "yes" to this question.

Third, the district court incorrectly compelled appraisal without adjudicating Empire's alleged breach of the provision through summary judgment. Specific performance of a contract is a remedy presupposing the existence and adjudication of a breach. Here, the lower court refused to require a summary judgment. **May a federal district court compel appraisal without adjudicating the breach of the provision through summary judgment?**

Fourth, the district court erroneously compelled appraisal of a supplemental windows and doors claim for which Empire wholly denied coverage. Under Florida law, Empire may only be compelled to appraise a supplemental claim it did not wholly deny coverage for. Despite Empire's denial of Marbella's windows and doors claim for belatedly presenting it over three years after the loss, the lower court still compelled its appraisal along with the initial roof claim. **May a federal district court compel appraisal of a supplemental claim, where the insurer has wholly denies coverage for the same?**

Lastly, the district court wrongly refused to consider providing any reasonable guidelines requested by Empire for safeguarding minimal due process at appraisal. Judicial enforcement of appraisal constitutes injunctive relief. The same requires tailoring under Rule 65 and the lower court's inherent powers. Moreover, judicial action must safeguard the parties' due process. The court below refused to consider appraisal instructions like the use of an itemized award form, disclaiming any power

to prescribe this.  **May the lower court tailor the remedy of compelling appraisal by prescribing reasonable guidelines?**

## STATEMENT OF THE CASE

### I.    Introduction

Judicial enforcement of insurance appraisals is in disarray. Federal procedure granting such relief has grown arbitrary and uncertain. It should be neither. Despite raising new questions of procedure, including how a federal court may properly compel appraisal, this case does not demand novel solutions. This Court is aided by long-standing common law and federal equitable principles. In and out of Florida, compelling appraisal constitutes the injunctive remedy of specific performance, absent a contrary statute. Logically, Federal Rules of Civil Procedure 56 and 65 should govern access to such relief. These rules safeguard due process in granting pleaded remedies before trial and compelling parties to act in aid of such relief. Yet, these rules are routinely side-stepped in compelling appraisal in this circuit.

Instead, district courts increasingly mirror a worrisome practice spreading among Florida courts. Rather than compel appraisal upon a showing of entitlement to specific performance, courts do so upon mere motion, without injunctive relief needing to be pleaded or proven. Adding to the uncertainty, district courts even allow these motions despite the moving party having initially pled—or attempted to plead—entitlement to specific performance. The result is a novel and unprincipled procedure. Essentially, the practice affords the benefits of Rules 56 and 65 without imposing on movants any of the attending burdens.

4

Against this backdrop, Empire was compelled to appraise below. It appeals from this unprecedented procedural shortcut to regain the long-standing guarantees of federal law and equity.

## II.    Historical and Legal Background

### A.    Growth of Procedural Disarray in Compelling Appraisal

Appraisal is routinely sought in cases like this one, with condominium associations claiming millions of dollars in benefits allegedly owed. Despite the high stakes involved in insurance appraisals, federal courts are inconsistent in how they compel them. An overview of the current procedural disarray in compelling appraisal helps to understand why the court below resorted to a novel procedure, how the latter contrasts with historical practice, and what the stakes of this appeal are for Empire and similarly situated parties.

Previously rare and cost-effective, appraisals are now the expensive "new normal" in property insurance claims due to climbing litigation. *See* Johnny Parker, *Understanding the Insurance Policy Appraisal Clause: A Four-Step Program*, 37 U.

TOL. L. REV. 931, 931 (2006).[2] The "gold rush"[3] to sue for appraisal raises concerns about exaggerated or fraudulent repair and replacement estimates. *See* MICHAEL BOYER & BARRY ZALMA, PROPERTY INVESTIGATION CHECKLISTS: UNCOVERING INSURANCE FRAUD §1:42 (13th ed., 2021 update).[4] Florida, of course, is ground zero for such litigation.[5]

---

[2] *See also* JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 5, 60 (3d ed., 2015) (noting increased litigation and expense); Timothy Gray, Brian Odom, & Shannon O'Malley, *Benefits, Pitfalls, and Trends in Property Insurance Appraisal*, 44-SPG BRIEF 20, 22 (2015) (intended as cost-effective); Mark Ticer, *A Primer on Appraisal in Texas: One of the Most Frequently Abused and Misused Provisions in an Insurance Policy*, 5 J. TEX. INS. L. 41, 42 (2004) (historically intended to benefit insurer).

[3] *Cf.* Evan Stephenson & Kayla Scroggins-Uptigrove, *"Just Win, Baby": The Tenth Circuit Rejects the "Anything Goes" Tactics of the Hail-Litigation Gold Rush,* 96 DENVER L. REV. 267, 267, 276 (2019) (describing increase in federal storm litigation as "gold rush," defined as "when the law substantially creates or expands opportunities to make money by filing civil lawsuits, and plaintiffs' lawyers respond . . . by filing many new lawsuits that previously would not have been brought").

[4] *Cf. also* BAXTER DUNAWAY, 4 LAW OF DISTRESSED REAL ESTATE §44A:17 (2022 update) (55% of real estate appraisers reported being pressured to inflate value). One wonders what that figure is among insurance appraisers, "not governed by any industry standards." Charles Edwards, *An Appraisal of the Appraisal Remedy in Property Insurance*, 136 THE NAT'L REV. (Vol. XII) (May, 11, 2022).

[5] Florida homeowner insurance litigation represented 76.4% of such litigation nationwide in 2019. Amy O'Connor, *NAIC Data: Florida Property Lawsuits Total 76% of Insurer Litigation in U.S.*, INSURANCE JOURNAL (April 14, 2021). This has turned Florida into "a legal sinkhole," "threatening to swamp [insurers] even during years when there are no storms," impacting both industry profits and homeowner premiums. Ed Leefeldt, *Why Is Homeowners Insurance In Florida Such a Disaster?*, FORBES (Mar. 26, 2021) ("Florida insurers saw a profit of almost $800 million in 2014 dwindle to a net loss of $340 million in 2019[.]").

The Florida Supreme Court's decision in *Johnson* likely played a role in the proliferation of appraisals and related litigation. *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002). Deviating from history,[6] *Johnson* allowed appraisers to decide damage causation, a coverage issue normally reserved for courts. Perhaps the Court did not understand it at the time, but allowing appraisers to determine causation is a practice that raises due process concerns. *See, e.g., Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 906 N.W.2d 205, 205 (Iowa Ct. App. July 19, 2017) (McDonald, J., dissenting). *Johnson* also exponentially raised the stakes, giving appraisers the ability to directly or indirectly decide coverage issues in multi-million dollar cases.

A subsequent Florida Supreme Court case further compounded the stakes in appraisal. While *Johnson* expanded the authority of appraisers, the Florida Supreme Court then reduced their accountability and procedural safeguards in 2002, when it held that the Arbitration Code was inapplicable to appraisals. *Allstate Insurance Company v. Suarez*, 833 So. 2d 762 (Fla. 2002). With the onslaught of the 2005 and

---

[6] *Cf.* Timothy Gray et al., *Benefits, Pitfalls, and Trends in Property Appraisal*, 44-SPG BRIEF 20, 21 (2015) (historically, appraisals only invoked if agreement existed on existence and scope of damage). Alabama continues to adhere to the majoritarian interpretation of appraisal as excluding causation determinations, openly rejecting *Johnson*. *See Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007).

2006 hurricane seasons, Florida experienced a "significant rise" in appraisal demands ever since.[7]

As a result of *Johnson* and *Suarez*, the perception is that not only could appraisers settle the scope, cause, and value of a multi-million dollar loss, but they could also do it *however* they wish. Any claim may become a multi-million dollar one. Unsurprisingly, disputes often arise involving the procedural and substantive contours of appraisal to correct that perception.

Yet, Federal courts have grown procedurally unpredictable in compelling appraisal. Some require that appraisal be pleaded or proven as specific performance. *See, e.g., Biscayne Cove Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23728-CIV, 2013 WL 2646828, at *3 (S.D. Fla. June 12, 2013). Others do not, denying that compelling appraisal is "remedial" at all. *See, e.g., Positano Place at Naples II Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-181, 2022 WL 714809 at *2 (M.D. Fla. Mar. 10, 2022). Yet others leave procedural burdens to the moving party's choice. *See, e.g., Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-178, 2022 WL 1085541, at *6 (M.D. Fla. Jan. 26, 2022).

Similarly, some courts construe motions to compel appraisal as essentially seeking summary judgment. *See, e.g., Palmer v. Fidelity Nat'l Prop. & Cas. Ins.*

---

[7] Thomas Kos, *The Appraisal Process*, PROPERTY CASUALTY 360 (Nov. 2, 2007).

*Co.*, No. 13-80741, 2014 WL 12461372, at *5 (S.D. Fla. Nov. 7, 2014). Others do

not. *See, e.g., Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins.*

*Co.*, No. 2:19-cv-81, 2019 WL 3852731, at *2 (M.D. Fla. Aug. 16, 2019). Even the

same judge will occasionally equivocate on the issue. *Compare Creekside Crossing*

*Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-00136, 2020 WL

5973177, at *4 (M.D. Fla. Sept. 2, 2020) (deeming "motion to compel appraisal . . .

presently equivalent to a summary judgment motion"), *with Creekside Crossing*

*Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136, 2021 WL 2003007,

at *1 (M.D. Fla. May 19, 2021) (deeming motion for summary judgment "not the

proper vehicle to address appraisal").

Relatedly, inconsistency also abounds in enforcing ensuing awards. Some

courts properly allow insurers to contest elements of coverage post-appraisal. Others

do not. A minority in this circuit continues to advocate the analogy of appraisals to

arbitration, "confirming" awards the same way. On this, "the federal courts . . . have

[also] muddied the waters." Gregory Dell et al., Florida Insurance Law &

Practice §14:8 (2021-2022 ed.).[8]

---

[8] *Compare, e.g., Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F.
Supp. 2d 1357 (M.D. Fla. 2003) (disallowing insurer from contesting elements of
coverage post-appraisal), *with Liberty American Ins. Co. v. Kennedy*, 890 So. 2d
539, 541 (Fla. 2d DCA 2005) (disapproving of *Three Palms Pointe* and allowing
challenge of coverage elements post-appraisal), *and Fla. Gaming Corp. v. Affiliated
FM Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at *1 n.1 (S.D. Fla.
Apr. 21, 2008) (following *Kennedy*).

Since *Suarez*, a novel practice has emerged whereby federal courts increasingly compel appraisal upon mere motion, a shadow of the process traditionally required for specific performance. And absent from federal "equity jurisdiction," embodied by Rule 65. *See Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991).[9] The court below relied on this novel practice in refusing to require a specific performance showing.

## B.    The Novel Process Defies Historical Practice

There is nothing normal to this "new normal" of compelling appraisal upon mere motions and argument of counsel. Although appraisal "has been a part of property insurance for at least 200 years," Gary Williams, *Winning the Property Insurance Appraisal*, 45-OCT JTLATRIAL 22, 26 (2009), this novel practice enforcing it is recent everywhere.

Historically, courts rarely compelled appraisal. In theory, they could through specific performance. *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 120-121 (1924). In practice, they did not. "[S]pecific performance [wa]s a departure from common law." *Hepburn et al. v. Auld. et al.*, 5 Cranch 262, 279 (1809). And breach of contract damages were available: a trial in lieu of appraisal could determine the

---

[9] *Cf. also Western Surety Co. v. PASI of LA, Inc.*, 334 F.Supp.3d 764, 799 (M.D. La. Sept. 25, 2018) ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

amount of loss. *See* 44 A.L.R.2d 850 §1 (1955) (insurer's failure to appraise "abrogate[d] the appraisal clause," freeing insured to "institute an action for damages for the breach").[10] So too in Florida. *Cf. Hanover Fire Ins. Co. v. Lewis*, 10 So. 297, 302 (Fla. 1891) (relying on *Gauche v. London & L. Ins. Co.*, 10 F. 347, 356 (E.D. La. 1881) (explaining that "'[i]f two persons, whether in the same or in a different deed from that which creates the liability, agree to refer the matter upon which the liability arises to arbitration, *that agreement does not take away the right of action*.'") (emphasis added)). Although some courts barred suit unless appraisal took place,[11] consequential damages were available for wrongful refusal. *See Biddle*, 24 F. Cas. at 256.[12]

Despite the "dearth of direct authority" on some aspects, 44 A.L.R.2d 850 §1 (1955), enough exists: appraisal was either not specifically performable at all, or was in theory but not in practice, due to available contractual damages. *See* Alfred Hayes,

---

[10] *See also Cedant Corp. v. Forbes*, 70 F.Supp.2d 339, 343 (S.D.N.Y. 1999); *Saba v. Homeland Ins. Co. of America*, 159 Ohio St. 237, 248-249 (Ohio 1953) (Hart, J., dissenting) (explaining common law refusal); *Tscheider v. Biddle*, 24 F. Cas. 253, 255 (E.D. Miss. 1877) (noting availability of damages).

[11] *Holmes v. Richet*, 56 Cal. 307, 313, 315 (Cal. 1880) (acknowledging failure of policy to make it a condition precedent, but still deeming appraisal as such).

[12] *Biddle*, 24 F. Cas. at 256. *Cf. also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6-7 (acknowledging insured's "'chicken-and-egg' dilemma" but noting adequate remedy in insured's bad faith claim).

*Specific Performance of Contracts for Arbitration or Valuation*, 1 CORNELL L. REV. 225, 225 (1916) ("doctrine that equity will not specifically enforce contracts for . . . valuation" "almost uniformly adhered to").[13]

Today, most jurisdictions continue to enforce appraisal through specific performance. JONATHAN WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL 344-345, 349 (3d ed., 2015). However, some did not initially allow specific performance absent an enabling statute. *See Happy Hank Auction Co. v. American Eagle Fire Ins. Co.*, 1 N.Y.2d 534, 538 (N.Y. 1956).[14] The proliferation of arbitration statutes caused

---

[13] *See also* Sidney Simpson, *Specific Enforcement of Arbitration Contracts*, U. PENN. L. REV. 160, 161, 176 (1934) (noting refusal to enforce even "in spite of the manifest inadequacy of the legal remedy," and explaining any change must be legislated); Wesley A. Sturges & William W. Sturges, *Appraisals of Loss and Damage Under Insurance Policies*, 13 U. MIAMI L. REV. 1, 2 (1958) (appraisal "enforcement" "at common law" "suggests, of course, specific performance of the provision" through suit "to obtain a[n] . . . injunctional order that the non-complying party proceed with appraisal," to force the appointment of appraisers or umpires, or for damages).

[14] *See also Penn Central Corp. v. Consolidated Rail Corp.*, 56 N.Y.2d 120, 129 (N.Y. Ct. App. 1982) (deeming specific performance of appraisal "a remedy not available at common law"). *Happy Hank's* view of the common law of appraisal was first contradicted by *Saba*, 159 Ohio St. at 237. Even critics of *Happy Hank* admit that *Saba's* approach was "new . . . within traditional equity jurisprudence." *See* Sturges, *supra* at 9, 13. *See also* 112 A.L.R. 9 (1938) (noting case law disproving Sturges' claims of "insufficient authority" on issue); Richard Coulson, *Is Contractual Arbitration an Unconstitutional Waiver of the Right to Trial by Jury in Oklahoma?*, 16 OKLA. CITY U. L. REV. 1, 11 (1991) (labeling "common law of arbitration" "monolithic").

12

further confusion in jurisdictions where they do not expressly include appraisals.[15] And yet, "[t]he distinction . . . can have ramifications on the authority of the court." 15 Couch on Insurance §209:10 (2021 update).[16]

Despite the "numerous courts around the country . . . tak[ing] guidance from cases and statutes relating to arbitration, insurance appraisal is actually distinct." Wilkofsky, The Law and Procedure of Appraisal at 21. Most states recognize this. *Id.* at 22-24. The analogy has yielded "serious consequences" nationwide. *Id.* at 37.

So too in this circuit. Pre-*Suarez* cases applying the Arbitration Code to appraisals caused "confus[ion] . . . with somewhat unpredictable consequences." Wilkofsky, The Law and Procedure of Appraisal at 23. The analogy is motivated by policy considerations. *Id.* at 39. Against *Suarez*, courts in this circuit continue to compel appraisal by relying on pre-*Suarez* cases. Even when Florida

---

[15] *See* Amy M. Coughenourd, *Appraisal and the Property Insurance Appraisal Clause—A Critical Analysis: Guidance and Recommendations for Arizona*, 41 Ariz. St. L.J. 403, 413 (2009). Nor do appraisals come within the Federal Arbitration Act. *Salt Lake Tribune Publ'g Co., LLC v. Management Planning, Inc.,* 390 F.3d 684 (10th Cir. 2004); *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684 (6th Cir. 2012).

[16] Timothy P. Law & Jillian L. Starnovicha, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, 13 Conn. Ins. L.J. 291, 298 (2006-2007) (issue "impact[s] the applicability of state and federal laws, as well as the procedural protections afforded").

courts increasingly warn that, in the appraisal context, "the analogy [to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712.

The novel practice of compelling appraisal has become noticed. *People's Trust Ins. Co. v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. 4th DCA 2019) (deeming, in *dicta*, mere motion to compel appraisal as "traditional" as pleading and proving specific performance). Yet, it is not traditional. And it is foreign to federal procedure. *See Mapleton Processing, Inc. v. Society Ins. Co.*, No. C12-4083-LTS, 2013 WL 3467190, at *24 (N.D. Iowa July 10, 2013) (disavowing such power).[17]

This new practice highlights why "[f]ew premises are recited so . . . reflexively, as 'specific performance is an extraordinary remedy.'" David Frisch, *Commercial Common Law, the United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 TLN. L. Rev. 495, 541 (1999). Historically, those seeking specific performance of non-land contracts "face[d] an uphill battle in American courts" given "the presumption in favor of money damages." Jason Kirwan, *Appraising A Presumption: A Modern Look at the Doctrine of Specific Performance In Real Estate Contracts*, 47 WM. & MARY L. REV. 697, 701 (2005). Today, it looks more like a race downhill. At least in the insurance context.

---

[17] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (same); *Battles, Inc. v. Nationwide General Ins. Co.*, No. 3:19-cv-13-DML-DCP, 2020 WL 6365513, at *4-*5 (E.D. Tenn. March 10, 2020) (same).

### III.    Factual and Procedural Background[18]

### A.    The Property and the Policy

This case involves a Hurricane Irma claim that Empire investigated and adjusted. Marbella, a residential complex spanning sixteen buildings, stands on Florida's southwestern shore in Bonita Springs [R. Vol. I at 223-25]. Each building is separately scheduled and insured under a policy, number ECL9490679-02 (the "Policy") [R. Vol. I at 218 ($16,065,318 total value)]. And each is subject to a 2% deductible (totaling about $321,306.36). *Id.* An aerial view of the property looks as follows:



[R. Vol. I at 107].

---

[18] All references to the Record on Appeal—the Appendix to Empire's merits brief to be filed shortly—are as follows: "R. Vol. _ at _," or "R. Vol. _ at _ (¶_)."

The Policy pays Replacement Cost coverage benefits by default and only after repairs are completed. The Policy also allows Marbella to instead present an ACV claim without having to perform repairs:

**3. Replacement Cost**

    **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

[. . .]

    **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

[R. Vol. I at 548]. The Policy also contains an appraisal provision [R. Vol. I at 250], which reads:

**Mediation Or Appraisal**

If we and you:

[. . .]

    **B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **1.** Pay its chosen appraiser; and

    **2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

16

### B.    Empire Investigates and Adjusts the Claim

Marbella first notified Empire of roof damage to its property as a result of Hurricane Irma in September of 2017 [R. Vol. II 372-73 (Third Defense)]. Empire immediately inspected the property [R. Vol. I at 22 (¶7)] and did not make payment because damage fell under the applicable deductibles.

Over two years later, in early 2020, Marbella reopened its roof claim, eventually claiming $6 million in estimated roof repairs [R. Vol. I at 73, 206; Vol. II at 294, 314]. Empire re-inspected and engineers again found damage to be minimal and under the applicable deductibles [R. Vol. I at 105-24].

Almost a year later—and three years after Hurricane Irma—Marbella asked Empire permission to "add" and "pursue" a new, damaged windows claim [R. Vol. I at 73; Vol. II at 291]. Empire refused, denying coverage for that separate claim partly because it was statutorily barred [R. Vol. II at 294]. Six months after Empire's request for a sufficient sworn proof of loss, Marbella first presented Empire with one in early 2021. Inexplicably, however, Marbella now claimed only about $4.3 million in replacement costs [R. Vol. I at 48]:

| | |
|---|---|
| 7. THE FULL COST OF REPAIR OR REPLACEMENT is | $4,381,332.18 |
| 8. Applicable DEPRECIATION OR BETTERMENT is | $578,301.88 |
| 9. ACTUAL CASH VALUE LOSS is | $3,803,030.30 |
| 10. LESS DEDUCTIBLES and/or participation by the insured | $321,306.36 |
| 11. ACTUAL CASH VALUE CLAIM is | $3,481,723.94 |
| 12. SUPPLEMENTAL CLAIM, to be filed in accordance with the terms and conditions of the replacement cost coverage within 12 months from the date of loss as shown above, will not exceed | $578,301.88 |

17

Notably, Marbella added a "supplemental" claim for unspecified damage in the amount of $578.301.88, presumably the windows claim [R. Vol. I at 48]. The $4.3 million estimate was created in May of 2021 [R. Vol. I at 179]. After an unsuccessful mediation that same month, Marbella sued Empire [R. Vol. II at 487].

### C.    Marbella Sues Empire

Marbella sued Empire in June of 2021 [R. Vol. I at 14-24]. Empire removed to federal court. *Id.* In its operative, single-count complaint, Marbella seeks breach of contract damages primarily due to Empire's alleged failure to pay Marbella's "reasonable estimates" of repair [R. Vol. I at 65-66 (¶¶14-15)].

Empire's operative answer denies all allegations of wrongdoing and raises several defenses, including that: (1) coverage for the loss is excluded due to wear and tear, among other causes; (2) coverage is barred due to Marbella's failure to timely provide a sufficient proof of loss; (3) Marbella failed to mitigate the damage; (4) ordinance or law benefits were barred because such costs were not incurred within two years; and (5) any supplemental claim for windows and doors is statutorily barred due to notice being given more than three years after the loss [R. Vol. II at 371-73].

Marbella then moved to compel appraisal [R. Vol. I at 91]. Empire opposed appraisal, arguing, among other things, that Marbella failed to plead and prove entitlement to the injunctive relief of appraisal and seek such relief through summary

judgment, and that Marbella's supplemental windows claim was not appraisable given Empire's whole denial of coverage for it [R. Vol. I. at 197-204]. Marbella's brief reply denied that appraisal required an injunctive or summary judgment showing, but did not address Empire's supplemental claim argument and even suggested that the appraisers use an itemized form for the any award, in response to Empire's ordinance or law argument [R. Vol. I at 302-304]. The Honorable Magistrate disagreed with Empire's arguments and recommended appraisal, but it also recommend that the parties confer on the use of an itemized award form at appraisal [R. Vol. II at 491-99; Vol. III at 500-504].

Empire objected to the report, elaborating on the erroneous reasoning of the Magistrate. Primarily, Empire argued that: (1) compelling appraisal required Marbella to plead and prove entitlement to injunctive relief; (2) guidelines, including an itemization of the award, are necessary under the circumstances; (3) Marbella should have made a summary judgment showing for such relief; and (4) Marbella's supplemental claim for windows was not appraisable [R. Vol. III at 507-518]. Marbella responded in opposition [R. Vol. III at 521-25]. The Honorable District Court Judge adopted the Magistrate's report and compelled appraisal [R. Vol. III at 538-45].

Empire since appealed from the order [R. Vol. III at 546]. After briefing by the parties [R. Vol. III at 586, 599], the district court has recently granted Empire's motion to stay the matter pending appeal [R. Vol. III at 625].

## STATEMENT OF THE STANDARD AND SCOPE OF REVIEW

This Court reviews *de novo* all legal conclusions in the orders[19] compelling appraisal. *See Jacobs v. Nationwide Mut. Fire Ins. Co.*, 236 F.3d 1282, 1285 (11th Cir. 2001). Other circuits agree. *See Fireman's Fund Ins. Co. v. Steele Street Limited II*, 2022 WL 39392, at *5 (10th Cir. Jan. 5, 2022) (reviewing interlocutory order compelling appraisal *de novo*); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1335 (7th Cir. 1983) (reviewing propriety of interlocutory appraisal order as legal ruling, not discretionary one). *Cf. also Milligan v. CCC Information Services, Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (reviewing *de novo*); *Nygaard v. Property Damage Appraisers, Inc.*, 779 Fed. App'x 474, 475 (9th Cir. 2019) (same).

Additionally, *de novo* review of all components of the orders is appropriate because Empire sufficiently objected to the Honorable Magistrate's report below as one made under 28 U.S.C. 636(b)(1)(B) (requiring district court to review *de novo* all portions) and Fed. R. Civ. P. 72(b)(3) (same). *Cf. J.P.F.D. Investment Corporation v. United Specialty Ins. Co.*, 769 Fed. App'x 698, 703 (11th Cir. 2019) (Fed. R. Civ. P. 72(b) applied to preserve *de novo* review of appraisal objections); *Rodriguez v. Powell,* 853 Fed. App'x 613, 618 (11th Cir. 2021) (same); *JM Walker LLC v. Acadia Ins. Co.*, 356 Fed. App'x 744, 748 (5th Cir. 2009) (same).

---

[19] Both rulings—the magistrate and the district court judge's—are before this Court. *See, e.g., Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 661 (7th Cir. 1998).

## SUMMARY OF THE ARGUMENT

**First, a federal court should not compel appraisal absent sufficient pleading and proof of entitlement to specific performance.** Florida law deems compelling appraisal specific performance relief. Federal courts may only exercise equitable powers (embodied by Rule 65) in affording it. Here, the lower court incorrectly asserted that it could compel appraisal as something *other than* specific performance, without pleading or other requirements governing contractual remedies or anchored in federal procedure.

**Second, a federal court should not compel appraisal without adjudicating the breach of the provision through summary judgment.** The specific performance of a contract is a remedy that presupposes its pleading and proof of a party's breach of the provision. Courts may not grant insufficiently pled relief or do so without adjudicating a breach. Here, the lower court did both.

**Third, a federal district court may not compel appraisal of buildings for which coverage was wholly denied.** Each building Marbella comprises is separately insured under the Policy. Florida law does not allow the appraisal of buildings for which an insurer has wholly denied coverage. Yet, despite Empire's denial of coverage to some buildings, the court below still ordered their appraisal.

**Lastly, a federal court may prescribe reasonable guidelines for appraisal in tailoring the remedy of compelling it.** Specific performance constitutes relief

22

that requires discretion and tailoring under Rule 65. A court may also resort to its inherent powers in imparting minimal instructions to safeguard the integrity and efficiency of the appraisal process, as well as the parties' due process. Here, the court declined to consider imposing any guidelines, including an itemized award form. It based its refusal on the erroneous legal conclusion that it lacked such power and exercising it would rewrite the Policy.

## ARGUMENT

## I. Compelling Appraisal without a Showing of Specific Performance was Procedurally Improper

Marbella should have sufficiently alleged and proven entitlement to specific performance under Rule 65. It did not. Instead, the court erroneously denied that compelling appraisal is "remedial" [R. Vol. III at 540], upholding the Magistrate's conclusion that Marbella "need not plead and prove" injunctive relief [R. Vol. II at 493].

First, the "right to compel appraisal" is enforceable through "a claim for specific performance of policy obligations" in Florida. *Nowroozpour*, 277 So. 3d at 136. *See also People's Tr. Ins. Co. v. Vidal*, 305 So. 3d 710, 715 (Fla. 3d DCA 2020) (same).[20] Compelling appraisal constitutes a discretionary remedy that must be pleaded or waived. *See People's Trust Ins. Co. v. Fernandez*, 317 So. 3d 207, 211 (Fla. 3d DCA 2021) (referring to appraisal as "remedy . . . [that] upholds the terms of the policy"); *Vidal*, 305 So. 3d at 715 (insurer sufficiently invoked appraisal in counterclaims).[21]

---

[20] *Cf. also Twelfth Ave. Investments, Inc. v. Smith*, 979 So. 2d 1216, 1220 (Fla. 4th DCA 2008) (appraisement of value in real estate context constituted specific performance).

[21] *Cf. Ruckdeschel v. People's Trust Ins. Co.*, 327 So. 3d 311, 314 (Fla. 4th DCA 2021) (reversing grant of motion to compel repairs where insurer never pleaded in answer or counterclaim a request of specific performance of its option to repair);

This Court has noted as much. *See, e.g., Anoushfar v. Lexington Ins. Co.*, No. 21-11244, 2021 WL 4848073. at \*7  (11th Cir. Oct. 18, 2021) (insured "s[ought] specific performance in the form of an order compelling . . . appraisal"). District courts in this circuit agree. *See, e.g., Biscayne Cove Condo. Ass'n, Inc.*, 2013 WL 2646828, at \*3.[22]

Other federal courts concur. *See Vista Pointe Townhome Ass'n Inc. v. Auto-Owners Ins. Co.*, No. 16-cv-0973, 2018 WL 1773407, at \*6 (D. Colo. April 13, 2018).[23] Even scholarship so believes. *See* 16 COUCH ON INSURANCE § 232:170 (3d

---

*Todd v. Hyzer*, 18 So. 888, 890 (Fla. 1944) ("[S]pecific performance is not a matter of right, but . . . determined from all the facts and circumstances.").

[22] *See also Residences at European Village Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 3:19-cv-1490, 2020 WL 5948314, at \*4 (M.D. Fla. July 17, 2020) (same); *Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965, 2011 WL 13099891, at \*3 (S.D. Fla. Sept. 11, 2011) (same); *Creekside Crossing Condo. Ass'n, Inc. v. Empire Indent. Ins. Co.*, No. 2:20-cv-136, 2020 WL 1904011, at \*1 (M.D. Fla. Apr. 17, 2020) (same).; *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F.Supp.2d 1332, 1334 (S.D. Fla. 2010) (denying appraisal for failure to plead and prove specific performance); *Saltponds Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 20-CV-10063-JEM, 2020 WL 6875747, at \*2 (S.D. Fla. Oct. 26, 2020) (dismissing count seeking specific performance of appraisal where coverage denied).

[23] *See also McCoy v. American Family Mut. Ins. Co.*, 189 F.Supp.3d 896, 900 (D. Minn. 2016) (motion to compel appraisal seeks specific performance despite parties' failure to characterize it as such); *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-cv-0228, 2010 WL 1186323, at \*3 (N.D. Tex. Mar. 26, 2010) (motion to compel appraisal enforces appraisal clause through specific performance); *St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*, No. 13-1977, 2013 WL 6190400, at \*3 (D. Minn. 2016) (motion to compel appraisal essentially a motion seeking specific performance order); *Sauer v. Xerox Corp.*, 17 F.Supp.2d 193, 201 (W.D.

ed., 2021) ("A policy's requirement for an appraisal of a loss may be specifically enforced.").[24]

Second, a federal court's equity jurisdiction to grant specific performance, embodied by Rule 65, requires a showing of injunctive relief. *Compare Ferrero*, 923 F.2d at 1448 (federal "equity jurisdiction" incorporated by Rule 65), *with Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1223, 1225 (10th Cir. 2009) ("Specific performance is an equitable remedy, and an interim grant of specific relief is a preliminary injunction.").[25] Federal procedure requires evidentiary satisfaction of Rule 65, the exercise of discretion in weighing factors, and the tailoring of this remedy. *Cf.* Sturges, *supra* at 3 n.6 (recognizing courts must weigh injunctive factors

_____

N.Y. 1988) (describing common law power to "order specific performance of an appraisal"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (denying appraisal for failure to plead and show specific performance entitlement); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (same).

[24] *See also* Sturges, *supra* at 2 (explaining that "enforcement" of appraisal "suggests, of course, specific performance of the provision" through suits seeking an injunction, the appointment of appraisers or umpires, or for damages); Hayes, *supra* at 225; Simpson, *supra* at 160-161; Amy Schmitz, *Ending A Mud Bowl: Defining Arbitration's Finality Through Functional Analysis*, 37 GA. L. REV. 123, 169 (2002) ("Under contract law, courts may enforce valid appraisal agreements and determinations by ordering damages, specific performance, or other contract remedies."); Law & Starinovich, *What Is It Worth? A Critical Analysis of Insurance Appraisal*, *supra* at 315-16 (compelling appraisal involves preliminary injunction).

[25] *See also* Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective*, 135 U. PENN. L. R. 909, 920 (1987) (specific performance incorporated by Rule 65); *PASI of LA, Inc.*, 334 F.Supp.3d at 799 ("[T]he Court cannot enforce state law allowing specific performance absent proof of . . . Rule 65's requirements.").

and exercise discretion in compelling appraisal).[26] The fact that Florida courts may do something else does not justify importing that practice. *Compare Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 466 (M.D. Fla. 2022) (conflict between Rule 65 and Florida law resolved in favor of the former), *with MaxLite, Inc. v. ATG Electronics, Inc.*, No. 15-1116, 2019 WL 3283077, at *3 (D. N.J. July 22, 2019) (refusing to enact "parallel procedure" tracking state "summary action" practice and instead evaluating injunction claim to compel payment through Rule 56).

Here, there is no doubt that Marbella did not plead entitlement to specific performance or other injunctive relief [R. Vol. I at 64-66].[27] Neither did Marbella's

---

[26] *See also* Amy Schmitz, *Refreshing Contractual Analysis of ADR Agreements by Curing Bipolar Avoidance of Modern Common Law*, 9 HARV. NEGOT. L. REV. 1, 2, 4 n.22 (2004) (courts should not automatically compel specific performance of extra-judicial resolution agreements without balancing equitable factors and exercising discretion); *Georgia Advocacy Office v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021) (Rule 65 allows for tailoring of injunction); Samuel Bray, *The System of Equitable Remedies*, 63 UCLA L. REV. 530, 557 (2016) (noting that under Rule 65 "court is not limited to saying merely 'perform the contract', and it may impose further conditions . . . as needed").

[27] "Specific performance shall only be granted when 1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005) (citation omitted). Marbella's complaint cannot satisfy these elements. *See, e.g., Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965-CIV, 2011 WL 13099891, at *3 (S.D. Fla. Sept. 21, 2011) ("[I]t is unclear that Plaintiff can demonstrate there is no adequate remedy at law"); *La Gorge Palace Condo. Ass'n, Inc.*, 733 F.Supp.2d at 1334 (same). *Cf. also Sardinas v. Miami Veterinary Specialists, P.A.*, No. 1:20-cv-22987, 2020 WL 7241364, at *10 (S.D. Fla. Dec. 8, 2020) (same in different context); *Vallina v. Mansiana Ocean Residences, LLC*, 2010 WL 11553422, at *8 (S.D. Fla. Oct. 12, 2010) (same).

motion make the kind of evidentiary showing required [R. Vol. I at 91-97]. *See* 5 BUS. & COM. LITIG. FED. CTS. § 49:79 (4th ed.2020) (motions for specific performance require "testimonial and documentary evidence, including expert testimony of the specialized nature of the contract subject matter that damages would not be a just and reasonable substitution for its loss"). Nor did the court treat the motion as one seeking Rule 65 relief. *See, e.g., Gray Ins. Co. v. Fla. Paving & Trucking, Inc.*, 2014 WL 12776172, at *2 (S.D. Fla. Feb. 10, 2014) (treating motion as Rule 65 one because "a stand-alone 'motion for specific performance' is not provided for").

That compelling appraisal is remedial and injunctive in nature is buttressed by the fact that, for purposes of appeals under Section 1292(a)(1), courts analyze whether a specific performance order "is injunctive in character" under Rule 65. *See Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012) (Pryor, C.J., concurring) (quoting *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008)). Thus, two other circuits deem orders compelling appraisal injunctive. *See Steele Street Limited II*, 2022 WL 39392, at *5 (holding order "requir[ing] . . . adher[ance] to the Policy's Appraisal Provision . . . substantively an injunctive order"); *Hayes*, 722 F.2d at 1335 (same). Still, the lower court refused to hold Marbella to the strictures of injunctive relief.

Third, the reasons proffered by the district court for its refusal are neither correct nor persuasive. Relying on no precedent, it concluded that compelling appraisal is not remedial, but the same as discovery relief [R. Vol. III at 540]. This contravenes Florida and federal precedent no less than nationwide practice. *See, e.g., Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 ("A court can compel parties to comply with their discovery obligations. Appraisal, however, is a right created by contract, not a discovery procedure."). The court relied solely on two rulings from fellow district court judges, currently on appeal [R. Vol. III at 541].

The court also asserted procedural power to compel appraisal based only on its "subject-matter jurisdiction" [R. Vol. III at 541]. Subject-matter jurisdiction does not automatically entail procedural jurisdiction for specific remedies. The court's reasoning side-steps Rule 65 and the exercise of equitable powers it governs. Nor is the mere fact that Empire's argument has not succeeded with other district court judges legally persuasive [R. Vol. III at 541].

Fourth, the Magistrate's analysis also failed to support the district court's ruling. He concluded that Marbella need not plead or prove injunctive relief, such as specific performance, relying on the same lower court rulings as the district court [R. Vol. II at 493]. The Magistrate inferred this from the fact that appraisal can be compelled in breach of contract-only cases [R. Vol. II at 494 (alluding to *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468, 2021 WL

4438370 (M.D. Fla. Sept. 28, 2021)]. Yet, the conclusion does not necessarily follow. The fact that a party *can seek* specific performance as part of a breach of contract (or, for that matter, declaratory judgment) action does not, by itself, suspend the requirement that, if the party so chooses, then it *must* also specifically *plead* it as part of that count. *Castillo* solved the problem by carving out an exception for insurance appraisals: unlike compelling appraisals in other areas of law, in the insurance context, a mere count of breach of contract will sufficiently *imply* a right to later compel the remedy. It does not provide a rationale or rely on precedent for its proposition. *Cf. Calzadilla*, 2019 WL 22455518, at *4 (court action taken "without analysis" "is not persuasive").[28] It incorrectly disagreed that compelling appraisal constituted injunctive relief. *Castillo*, 2021 WL 4438370, at *1-*2. And it did not even involve a motion to compel appraisal or the identical argument here. It is distinguishable and unpersuasive.

    The Magistrate and district court's conclusions that a party can *choose* between two fundamentally different ways to seek appraisal, one grounded in pleading and precedent, another unmoored from precedent or common law, may

---

[28] *See Battles, Inc.*, 2020 WL 6365513, at *5 (denying appraisal while sitting in diversity jurisdiction and explaining that, although "Plaintiff cites several cases, arguing that motions to compel the appraisal process are regularly considered by courts . . . [t]hese cases, however, do not discuss the proper procedure to bring such motions"); *Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (similarly denying motion).

ultimately derive from *Nowroozpour*. There, the panel noted that "it may [still] be more traditional" for a party to merely "move to compel an appraisal to seek enforcement of the policy provisions." *Nowroozpour*, 277 So. 3d at 136. This was not its holding. *Cf. Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 737 (2007) (courts "not bound to follow . . . dicta in a prior case in which the point now at issue was not fully debated"); *Hale v. Johnson,* 845 F.3d 224, 228 n.1 (6th Cir. 2016) ("[D]icta" "lack[ing] . . . analysis on [an] issue . . . is unpersuasive.").

Notably, *Nowroozpour* has no bearing on federal procedure. Whatever the recent traditions of Florida courts of general jurisdiction, this issue turns on a question of procedure among federal courts of limited jurisdiction under *Erie*.[29] "In [a] diversity case," federal courts "apply federal procedural law." *J.P.F.D. Investment Corporation,* 769 Fed. App'x at 702 n.3.[30]

The rationale of the trial court rulings relied on below is that, despite *Suarez*, appraisal provisions are still treated as arbitration provisions. *See Three Palms*

---

[29] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

[30] *See also Vista Pointe Townhome Ass'n Inc.*, 2018 WL 1773407, at *6 n.5 (refusing to compel appraisal on similar grounds); *Battles, Inc.*, 2020 WL 6365513, at *4-*5 (denying appraisal because diversity jurisdiction required application of federal procedural law); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (expressing similar concerns).

*Pointe, Inc.*, 250 F.Supp.2d at 1362. But this is a matter of federal procedure. And even if Florida law controlled, no aspect of appraisals is subject to its Arbitration Code. This Court need not "make a[] [new] *Erie* guess that the Florida Supreme Court would not apply [a] statute," like the Arbitration Code, here. *cf. McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). It did so long ago. *Southern Flapjacks*. *See Columbia Cas. Co. v. Southern Flapjacks, Inc.*, 868 F.2d 1217, 1223 (11th Cir. 1989) ("The Florida Arbitration Code applies . . . not to appraisals.").[31] Florida precedent has since validated *Southern Flapjacks*.

*Suarez* "held that the Florida Arbitration Code is not applicable to appraisal cases." *Citizens Prop. Ins. Corp. v. Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d 709, 712 (Fla. 3d DCA 2009). Since *Suarez*, Florida's appellate courts have continued to curb all recourse to the Code. *See State Farm Fla. Ins. Co. v. Gonzalez*, 76 So. 3d 34, 37 (Fla. 3d DCA 2011) (rejecting "petition to confirm" appraisal award as if it were an arbitration award) (*citing Florida Insurance Guaranty Ass'n v. Olympus Ass'n*, 34 So.3d 791 (Fla. 4th DCA 2010)); *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. 3d DCA 2013) ("The Florida Arbitration Code is not applicable to appraisal awards."); *Cuban-Hebrew*

---

[31] Early precedent nationwide deemed appraisals outside the scope of arbitration statutes. *See, e.g., City of Omaha v. Omaha Water Co.*, 218 U.S. 180, 192-99 (1910) (holding appraisal not arbitration); *Collins v. Collins*, 53 Eng. Rep. 916, 919 (1858) (same).

*Congregation of Miami, Inc.*, 5 So. 3d at 712 (reversing trial court's refusal, based on Arbitration Code, to apply deductibles to appraisal award).

The trend is clear. For example, writing for the majority in an opinion before his ascension, Justice Canady expressly disapproved of *Three Palms Pointe*'s refusal to allow the challenge of coverage for elements of loss after appraisal. *Kennedy*, 890 So. 2d at 541. Every other district with an opinion agrees with *Kennedy*. *See American Capital Assurance Corp. v. Leeward Bay at Tarpon Bay Condo. Ass'n, Inc.*, 306 So. 3d 1238, 1243 (Fla. 2d DCA 2020); *Williams v. Citizen Prop. Ins. Co.*, 285 So. 3d 334, 335 (Fla. 4th DCA 2019); *Safepoint Ins. Co. v. Hallet*, No. 5D20-206, 2021 WL 2599656, at *2 (Fla. 5th DCA, June 25, 2021); *Olympus Ass'n*, 34 So. 3d 791; *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1229. As do most district court rulings in this circuit.[32]

---

[32] Although "federal district courts have divided as to whether . . . to follow *Three Palms Pointe* or . . . *Kennedy*," *Fouladi v. Geovera Specialty Ins. Co.*, No. 6:18-cv-326-Orl-40KRS, 2018 WL 3761039, at *6 n.4 (M.D. Fla. April 30, 2018), a growing majority of cases in this Circuit *expressly* side with *Kennedy*. *See Fla. Gaming Corp. v. Affiliated FM Ins. Co.*, No. 07-20897-Civ-Ungaro, 2008 WL 11407210, at *1 n.1 (S.D. Fla. Apr. 21, 2008); *Sands on the Ocean Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 05-14362-Civ, 2009 WL 790120, at *2-*3 (S.D. Fla. Mar. 24, 2009); *Jin Zhi Star Lt. LLC v. American Zurich Ins. Co.*, No. 08-61101-Civ-Moreno/Torres, 2011 WL 13110260, at *3-*4 (S.D. Fla. June 16, 2011); *Grove Towers Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-24199-Civ-Cooke/Goodman, 2020 WL 4561599, at *4 (S.D. Fla. June 9, 2020).

Although this Court would "write[] in . . . disappearing ink" on the issue, *McMahan*, 311 F.3d at 1079, writing in Florida is on the wall: "the analogy [to the Code] [i]s misplaced." *Cuban-Hebrew Congregation of Miami, Inc.*, 5 So. 3d at 712. Analogy is a tool of reasoning, not a source of power. An Article III court cannot exercise Rule 65 powers outside its bounds, anchored in mere reasoning. To say that *Suarez* has had no effect on this issue, and rule that appraisal may be compelled as discovery or mediation compliance [R. Vol. III at 541], disregards the legal trend just described.[33]

Lastly, the lower court's practice has arbitrary and unfair consequences. In affording the same relief whether Marbella chose to plead and prove it as specific performance or not, the court allows Marbella to *choose* between a higher and lower burden to obtain the *same* thing. Nothing comparable is done in other legal contexts. It is the nature of the relief that triggers the procedural mechanisms procuring it, not the choice of vehicle that freely redefines such relief. Additionally, if true, the lower court's analysis necessarily defeats the well-recognized duty of litigants to preserve

---

[33] Should any aspect of this issue turn on a question of Florida law, Empire respectfully requests this Court to certify it to the Florida Supreme Court. *See, e.g., Anderson v. Auto-Owners Ins. Co.*, 172 F.3d 767 (11th Cir. 1999) (certifying question involving insurance policy), *certified question answered by Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000); *Sun Ins. Office, Ltd. v. Clay*, 133 So. 2d 735, 742 (Fla. 1961)("It is now well established procedure for a federal court to abstain from deciding the merits of a case so as to afford the state courts a reasonable opportunity to construe a state statute involved in the case.").

or waive, *in pleading*, the right to compel of appraisal. A concise blueprint of what appraisal litigation should procedurally look like may be useful.[34]

## II. Compelling Appraisal Absent Summary Judgment that Empire Breached the Provision Constituted a Grant of Unpled Relief Redressing an Un-adjudicated Wrong

The court erred in concluding that it did not need to "treat [Marbella's] motion to compel appraisal as one for summary judgment" [R. Vol. III at 541]. In the absence of an adjudicated breach, Empire should not have been forced to perform.

First, "[s]pecific performance . . . is a remedy for breach." *Ostuw*, 2020 WL 6305105, at \*3. This entails "a cause of action which requires proof the contract was breached.'" *Macom Technology Solutions Holdings, Inc. v. Ifineon Technologies AG*, 881 F.3d 1323, 1332 (Fed. Cir. 2018) (citation omitted). *Cf. also Anoushfar*, 2021 WL 4848073, at \*3, \*7 (specific performance claim logically depended on breach of contract). It demands "proof of the contract . . . and of its breach." *Tipton*

---

[34] Ordinarily, compelling appraisal should be sufficiently pleaded as specific performance. This allows the insurer to raise equitable and other defenses. A motion to compel appraisal should require a showing under Rule 65. The movant must meet the high burden of specific performance. As argued below, it should also seek summary judgment on that relief as pleaded. If any award is not paid, then the movant (often the insured) may file a supplemental pleading alleging that the non-movant (often the insurer) has breached the policy by failing to make payment. *Cf. J.P.F.D. Investment Corp.*, 769 Fed. App'x at 705-706 ("If the parties cannot agree on the covered loss amount, they must undergo the contractual appraisal before [the insurer's] obligation to pay . . . ripens."). The parties may then continue litigation of coverage post-appraisal, as required by *Kennedy*. And the movant may even seek summary judgment on the amount owed, per *Mango Hill #6 Condo. Ass'n, Inc.*

*v. Woodbury*, 616 F.2d 170, 178 (5th Cir. 1980). Unsurprisingly, appraisal is often openly sought through summary judgment. *See, e.g., Jacobs*, 236 F.3d at 1285 (reviewing summary judgment order compelling appraisal).[35] Marbella should be required to defeat Empire's defenses. *See Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 1996).[36] Yet, here, it failed to do so.

Second, "[a]lthough" Marbella's motion "was styled as a motion to compel [appraisal] . . . it is essentially a motion for summary judgment." *J.W. Mariner Corp. v. Zurich American Ins. Co.*, No. 5:20-cv-143, 2021 WL 4958099, at *1 n.1 (N.D. Fla. July 7, 2021). *See also Great Lakes Ins. SE v. Concourse Plaza, A Condo. Ass'n, Inc.*, No. 21-cv-21873, 2022 WL 1681883, at *3 (S.D. Fla. May 26, 2022) (treating motion to compel appraisal as one for summary judgment, since it "will dispose of" pleaded entitlement to appraisal).[37] Federal courts elsewhere agree. *See, e.g., McCoy*,

---

[35] *See also Pernas v. Scottsdale Ins. Co.*, No. 1:15-cv-21506, 2016 WL 471949, at *2 (S.D. Fla. Feb. 8, 2016); *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, No. 10-61987, 2013 WL 1191413, at *2-*3 (S.D. Fla. Mar. 22, 2013); *People's Trust Ins. Co. v. Slavin*, No. 4D21-3025, 2022 WL 1021043, at *1 (Fla. 4th DCA April 6, 2022).

[36] *Cf., e.g., Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 602 (Fla. 4th DCA 2019) (Warner, J., dissenting) (same).

[37] See also *Indian Harbor Insurance Company v. International Studio Apartments, Inc.*, No. 09-60671-CIV-ALTONAGA/Brown, 2009 WL 10668754, at *3 (S.D. Fla. Sept. 22, 2009) (treating motion to compel appraisal as one for summary judgment); *Palmer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, No. 13-80741, 2014 WL 12461372, at *5 (S.D. Fla. Nov. 7, 2014) ("Plaintiff's Motion to Compel . . . Appraisal . . . is essentially [its] own motion for summary judgment on this issue.").

189 F.Supp.3d at 900 (motion to compel appraisal "seek[s] partial summary judgment on . . . claim that [insurer] has breached the Policy by refusing to participate in the appraisal process").[38] Here, the lower court refused to require Marbella to seek summary judgment or treat the motion as one for summary judgment.

Third, the lower court's sole reason to the contrary is unpersuasive [R. Vol. III at 541(citing *Waterford Condo. Ass'n of Collier Cty., Inc.,* 2019 WL 3852731, at *2)]. *Waterford* is neither analogous nor persuasive.[39] It is not precedent. Additionally, it incorrectly reasoned that what determines if summary judgment is necessary to compel appraisal is whether appraisal will decide if the amount is owed. 2019 WL 3852731, at *2. But what determines whether summary judgment is required is whether the movant is seeking an adjudication—partial or not—of a

---

[38] *See also St. Panteleimon Russian Orthodox Church,* 2013 WL 6190400, at *3 (motion seeking appraisal functionally summary judgment motion seeking specific performance); *Battles, Inc.,* 2020 WL 6365513, at *4-*5 (court "declin[ing] to exercise its power [to grant a motion to compel appraisal] without a motion for summary judgment or an adjudication on the merits"); *Mapleton Processing, Inc.*, 2013 WL 3467190, at *24 (same); *Battles, Inc.*, 2020 WL 6365513, at *5 (same).

[39] Empire has appealed many of those cases recently rejecting its argument. *See, e.g., Creekside Crossing Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-136, 2022 WL 780950, at *2 (M.D. Fla. Mar. 15, 2022); *Positano Place at Naples III Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-183, 2022 WL 714810, at *2 (M.D. Fla. Mar. 10, 2022).

claim, defense, or affirmative relief that is a component of either. Fed. R. Civ. P. 56(a). If the amount of loss, once calculated by appraisers, is appropriate for summary judgment,[40] why is entitlement to compelling that calculation not also appropriate? There should be no procedural carve-out for insurance cases involving appraisal.

### III. The District Court Erroneously Compelled Appraisal of a Supplemental Windows and Doors Claim Wholly Denied by Empire

The lower court erred in compelling appraisal of the supplemental windows and doors claim for which Empire wholly denied coverage [R. Vol. III at 494-498, 553]. None of the reasons advanced below supported the conclusion.

First, Marbella's windows claim was supplemental and wholly denied by Empire. "[C]ausation is a coverage question for the court when an insurer wholly denies that there is a covered loss[.]" *Johnson*, 828 So. 2d at 1022. Here, Marbella initially reported roof damage due to Hurricane Irma in September of 2017 [R. Vol. II at 373 (Third Defense)]. Two months later, Empire inspected and denied the claim as encompassing damages that fell under applicable deductibles. Over two years later, Marbella first reopened the roof claim and presented a $6 million roof replacement estimate in January of 2020. Then, three years after the loss, and while the reopened roof claim was being adjusted, Marbella presented an *additional*

---

[40] *Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d at 1230.

window damage claim [R. Vol. I at 201; R. Vol. II at 291 (requesting to "add" windows claim)]. Inexplicably, Marbella recalculated its roof claim at $4.3 million and added a "supplemental claim" of $578.301.88 in its proof of loss [R. Vol. I at 48]. Empire wholly denied it because it was statutorily barred [R. Vol. I at 201; R. Vol. II at 294].

Since Empire wholly denied the additional claim, it should not be appraised. This case is indistinguishable from the only Florida precedent on the issue: *Veranda I* and *Ironwood, Inc*. As in this case, the insured in *Veranda* and *Ironwood* first reported a loss, which was separately investigated and adjusted, only to much later present supplemental window claims. *Heritage Prop. & Cas. Ins. Co. v. Veranda I at Heritage Links Ass'n, Inc.*, 334 So. 3d 373, 374 (Fla. 2d DCA 2022); *American Coastal Ins. Co. v. Ironwood, Inc.*, 330 So. 3d 570, 571 (Fla. 2d DCA 2021). And like this case, the insurer in *Veranda I* wholly denied the additional windows claim. 334 So. 3d at 375. The insurer in *Ironwood, Inc.* refused appraisal of the additional claim until it completed its coverage determination. 330 So. 3d at 571-72. In *Veranda I*, the Second District Court of Appeal reversed the trial court's order compelling appraisal "[b]ecause," under the policy, "[the insured's] claim for windows and doors was a supplemental claim for coverage," "[a]nd since Heritage wholly denied coverage for that supplemental claim, *Johnson* and its progeny precluded the trial court from referring it to appraisal." 334 So. 3d at 376-77. In

*Ironwood, Inc.*, a similar result ensued because the subsequent windows claim was not "an aspect of the initial roof-damage claim" and appraisal was unripe until coverage was separately determined. 330 So. 3d at 573.[41] Marbella did not address these cases in its reply to Empire's response [R. Vol. II at 303].

Second, the lower court's conclusion otherwise was erroneous. The district court failed to analyze the precedent cited. Instead, it reframed the question as one of discretion. According to the lower court, it could choose to compel appraisal of the supplemental claim now and later resolve the alleged factual dispute of whether the claim was supplemental (and wholly denied) to begin with [R. Vol. III at 553]. This is incorrect. Although the timing of coverage adjudication and appraisal may be a matter of discretion, the supplemental nature of the windows claim is not a "coverage" issue but one going to the heart of Marbella's *current* entitlement to appraise the windows claim and the latter's ripeness *now*. Effectively, the lower court's reasoning bootstrapped the propriety of appraising the windows claim by concluding that it is appraisable *for now*, until at some point in the future a determination is made that the claim was supplemental all along and, therefore,

---

[41] This is buttressed by other examples of "whole denials" precluding appraisal. For example, an insurer's whole denial of coverage for some buildings in a multi-building condominium will defeat appraisal as to those buildings, but not the others for which some coverage was partially admitted. *See Pernas*, 2016 WL 471949, at *3. Nationwide, it "is generally sacrosanct that the values to be appraised are as to each item of loss claimed," WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 69, not a generalized "claim" or "loss."

improper for appraisal, at which time the court presumably will ignore any component of an appraisal award addressing it. Respectfully, this is not how Florida law addresses the question.

The Magistrate's reasoning fared no better [R. Vol. II at 495]. Contrary to his assertion otherwise, there is no factual dispute that the windows claim, as presented, falls under the Policy's definition of supplemental claim and was statutorily barred. And if there is such a dispute, the district court should have resolved it before compelling appraisal, not held it in suspense for the remainder of the case. To the extent the lower court adopted the Magistrate's conclusions that the windows claim was neither supplemental nor statutorily barred, it erred. The undisputed timing of the additional claim and the Policy's language, identical to that in *Veranda I* and *Ironwood, Inc.*, suggest that the windows claim was supplemental and, therefore, not appraisable given Empire's whole denial [R. Vol. II at 284 (Section H)]. If the claim falls under the relevant definition, then the result here should be the same as in these cases, regardless of distinguishable aspects immaterial to their rationale. Additionally, the record is also clear that the claim is statutorily barred. Critically, these arguments are interrelated but analytically separate.

The Magistrate incorrectly reasoned that, although the windows claim was made three years after the loss, it was still made within one year from the time Marbella first presented its estimate of repairs [R. Vol. II at 496]. Of course, this

41

one-year grace period is found nowhere in the Policy, the relevant statute, or precedent discussed above.[42] It cannot defeat the Policy's definition of what a supplemental claim is. The Magistrate found that this was not a case where the windows claim was presented years later. *Id.* But that is exactly what happened here. The claim was reported and adjusted in 2017. There is no dispute that a windows claim was made for the first time three years after Hurricane Irma made landfall and the initial roof claim had been closed and reopened. The Magistrate conflated the issue of whether Section 627.70132(2) rendered notice of the supplemental claim late, with the separate issue of whether, as defined in the statute and the Policy, the windows claim was supplemental and, Empire having denied it entirely, not proper for appraisal. The arguments advanced by the Magistrate and district court below— not raised by Marbella itself—were insufficient.

---

[42] Although not clear, the Magistrate may have been referring to the sworn proof of loss form's statement that the "supplemental" claim is "to be filed . . . within 12 months from the date of loss" [R. Vol. I at 48]. This is not part of the provision controlling what a supplemental claim is. Nor did Marbella argue it. It is a representation of what Marbella will do by a certain time. Critically, that time is within 12 months of the *loss*—not 12 months from presenting an estimate.

**IV.    The District Court Refused Imparting Guidelines for Appraisal Based on the Erroneous Legal Conclusion that It Lacked Such Discretion**

**A.    The District Court Failed to Review the Issue *De Novo***

Despite recognizing that it needed to review the Magistrate's report *de novo* [R. Vol. III at 549], the district court improperly analyzed its conclusions on this issue for clear error [R. Vol. III at 552-53]. All issues required *de novo* review.

The court was "obligated to make a *de novo* review of . . . those factual findings and legal conclusions that are the subject of objections" in a ruling "compelling appraisal." *Calzadilla v. Scottsdale Ins. Co.,* No. 18-25424, 2019 WL 2245518, at *5 (S.D. Fla. April 10, 2019). The practice is nearby universal.[43] And for good reason. Such reports pass on a "matter dispositive of a claim or defense." Rule 72(b)(1). *See also* 28 U.S.C. §636(b)(1)(B); *J.P.F.D. Investment Corporation v.,* 769 Fed. App'x at 703 (same). Other federal courts agree. *See, e.g., State Farm*

---

[43] *See Baldwin Realty Group Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Or1-41DCI, 2018 WL 5221228, at *1 (M.D. Fla. Oct. 22, 2018) (adopting magistrate's ruling on appraisal only "[a]fter a de novo review of the record"); *Castillo at Tiburon Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.,* No. 2:20-cv-468, 2021 WL 4438370, at *2 (M.D. Fla. Sept. 28, 2021) (same); *Coral Reef Metro, LLC v. Scottsdale Ins. Co.,* 2019 WL 700114, at *1 (M.D. Fla. Feb. 20, 2019) (same); *Waterford Condominium Ass'n of Collier County, Inc.,* 2019 WL 3852731, at *1 (same); *Michelle Condominium, Inc. v. Certain Underwriters at Lloyd's, London,* 2021 WL 4244899, at *1 (S.D. Fla. Sept. 17, 2021) (same); *SB Holdings I, LLC v. Indian Harbor Ins. Co*., No. 6:19-cv-668-Or1-40DCI, 2020 WL 1674326, at *1 (M.D. Fla. Jan. 9, 2020) (same); *Metropolitan Casualty Ins. Co. v. SFR Services L.L.C.,* 2020 WL 4207375, at *1 (M.D. Fla. July 22, 2020) (same); *Bettor v. Esurance Property and Casualty Ins. Co.*, No.: 18-61860-CIV-MORENO, 2019 WL 3408900, at *1 (S.D. Fla. June 17, 2019) (same).

*Fire & Cas. Co. v. Harper*, No. 3:20-cv-00856, 2022 WL 989088, at \*2-\*3 (M.D. Tenn. Mar. 31, 2022) (reviewing appraisal order *de novo* because it required specific performance and policy interpretation). Here, the error affected the outcome.

**B.  The District Court Improperly Refused to Impart Appraisal Guidelines**

The lower court improperly refused to consider any reasonable guidelines for the appraisal process, incorrectly assuming it lacked the power to prescribe them [R. Vol. III at 552]. This fell short of the "great care" that "must be taken to assure that the power of a court to require . . . action does not result in unwarranted harm to the defendant." *Alabama v. U.S. Army Corps of Engineers,* 424 F.3d 1117, 1127 (11th Cir. 2005).

First, a district court judge is required to exercise discretion in tailoring the specific performance of appraisal. *Cf.* Sturges, *supra* at 3 n.6 (courts must weigh injunctive factors and exercise discretion in compelling appraisal).[44] Although the "court is not limited to saying merely 'perform the contract', and it may impose further conditions . . . as needed," Samuel Bray, *supra* at 557, that is just what the lower court did here.

---

[44] *See also* Amy Schmitz, *supra* at 4 n.22 (specific performance of extra-judicial resolution agreements requires balancing of factors and discretion); *Jackson*, 4 F.4th at 1208 (Rule 65 allows for tailoring).

Second, a district court may also impart reasonable instructions for appraisal to safeguard its efficiency and the parties' due process. "'[C]ertain implied powers must necessarily result to our Courts of justice.'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (citation omitted).

Relatedly, "the Due Process Clause requires certain *minimum procedures* 'to ensure that [a property interest] is not arbitrarily abrogated.'" *Smith v. Organization of Foster Families for Equality and Reform*, 431 U.S. 816, 859 (1977) (Stewart, J., concurring) (internal quotations and citation omitted) (emphasis added). "[T]hat minimum is any reasonable procedure . . . which fairly protects . . . from arbitrary action." *Burgess v. Miller*, 492 F.Supp. 1284, 1290 (N.D. Fla. 1980).

Governmental action mandating appraisal implicates due process. *See, e.g., Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*, 284 U.S. 151, 158 (1931) (upholding constitutionality of statute mandating insurance appraisals only if "procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard"). Judicial enforcement is no different. Courts have long required appraisal to respect minimal due process despite its informality. *See, e.g., Providence Washington Ins. Co. v. Gulinson*, 215 P. 154, 155 (Col. 1923) (reversing appraisal award because "[a]rbitrators constitute a quasi court, and while no

45

formalities are necessary, yet some . . . duties and responsibilities are similar"), *approved by Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 443 P.3d 47, 52 (Col. 2019).[45] The same is true of Florida. *See, e.g., Lewis*, 10 So. at 302 (noting appraisal award not binding if "irregularity, unfairness, or fraud" shown) (relying on *Burchell v. Marsh*, 58 U.S. 344, 349 (1854) (award valid only "[i]f [it] is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties")).

Federal courts continue to exercise inherent powers to safeguard efficiency and due process when they compel appraisal. *See, e.g., Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F.Supp.3d 1150, 1155 (D. Colo. 2015) (imposing minimal guidelines under "inherent power 'to control and supervise its own proceedings'") (citing *United States v. Carrigan*, 804 F.2d 599, 603 (10th Cir. 1986)).[46] Reasonable instructions "protect the integrity of the process[,]" "increase

---

[45] *See also St. Paul Fire & Marine Ins. Co. v. Walsenburg land & Development Co.*, 278 P. 602, 603 (Col. 1929) ("It is axiomatic that every man has a right to be heard before judgment; also that he may waive that right. We do not think this appraisal clause was such a waiver."); *Itasca Paper Co. v. Niagara Fire Ins. Co.*, 220 N.W. 425, 426-27 (Minn. 1928) ("The duties of the board of appraisal are in the nature of common-law arbitration."); *Hozlock v. Donegal Companies/Donegal Mut. Ins. Co.*, 745 A.2d 1261, 1263 (Pa. Super. Ct. 2000) (appraisal judicially reviewed like common law arbitration).

[46] *See also Villareal v. Owners Ins. Co.*, No. 16-cv-01862, 2016 WL 9735733, at *2 (D. Col. Dec. 1, 2016) (crafting appropriate guidelines for appraisal); *Am. Storage Centers v. Safeco Ins. Co. of Am.*, 651 F.Supp.2d 718, 720 (N.D. Ohio 2009) (referencing "instructions for the . . . appraisal process"); *CIGNA Ins. Co. v. Didimoi*

the likelihood of a valid appraisal award," and "allow the appraisal process to proceed in an orderly and efficient manner that conserves the Court's resources and minimizes the need for further involvement of the Court." *Id.*

Third, the lower court's authorities for refusing guidelines are unpersuasive. The instructions sought by Empire included a calculation of ACV that excludes matching and depreciates labor, and an itemization of the award [R. Vol. III at 513-14]. Without elaboration, the court relied on fellow district court rulings denying itemization because "no policy language requires" them [R. Vol. III at 552 (citing *Castillo*, 2021 WL 4438370, at *6, *Coral Reef Metro, LLC v. Scottsdale Ins. Co*., No. 2:18-cv-460, 2019 WL 721286, at *3 (M.D. Fla. Jan. 30, 2019), and *Waterford*, 2019 WL 3852731, at *3)]. Yet, none of these orders are binding. *Harris v. Equifax Information Services, LLC,* No. 8:20-cv-1770, 2020 WL 6545977, at *2 n.3 (M.D. Fla. Nov. 6, 2020) ("[F]ederal district judges . . . lack authority to render . . . decisions binding other judges, even members of the same court.").

Nor are they persuasive. Here, the district court upheld the Magistrate's recommendation that the parties confer in good faith about the form to be used by the appraisers [R. Vol. III at 552]. *Castillo*, *Coral Reef*, and *Waterford* did not

---

*Prop. Holdings, N.V.*, 110 F.Supp.2d 259, 275 (D. Del. 2000) (ordering issues to be addressed by appraisers); *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.,* 981 F.Supp. 581, 607 (N.D. Iowa 1997) (parties may seek instructions if intractable disputes arose over appraisal process).

involve the same Rule 65 and due process arguments raised in this case. And *Coral Reef*, for example, relied exclusively on *Intervest Constr. Of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494 (Fla. 2014). *Coral Reef Metro, LLC*, 2019 WL 721286, at * 3.Yet, *Intervest* did not involve an appraisal award or consider the question posed below. 133 So. 3d at 497.

     *Waterford*'s rationale against itemization, that it "will . . . rewrite the policy," *Waterford*, 2019 WL 3852731, at *3, cannot defeat Empire's Rule 65 and due process arguments. On the one hand, it is incorrect. *See Bonafonte v. Lexington Ins. Co.*, No. 08-cv-21062-CIV, 2008 WL 2705437, *2 (S.D. Fla. July 9, 2008) (itemization instruction proper); *Olympus Ass'n, Inc.*, 34 So. 3d at 796 n.1 (approving of *Bonafonte*).

     On the other hand, the same textual analysis supporting itemization supports Empire's instructions for calculating ACV and safeguarding due process. The appraisal provision "leave[s] much to the imagination . . . with regard to . . . procedure." WILKOFSKY, THE LAW AND PROCEDURE OF APPRAISAL at 69. But it implies just enough. Appraisal will be of "the loss," and appraisers "will state separately the value of the property and the amount of loss" [R. Vol. I at 250]. The payable value of lost or damaged property must be "in accordance with" the valuation provision [R. Vol. I at 244]. That provision, in turn, separately outlines actual cash value ("ACV"), replacement cost value ("RCV"), and other expenses as

the kinds of value in the Policy [R. Vol. I at 245]. ACV is generally read as meaning replacement cost minus depreciation. *Sos v. State Farm Mutual Auto. Ins. Co.*, 396 F.Supp.3d 1074, 1079 (M.D. Fla. 2019).[47] The RCV provision replaces the valuation provision, requiring actual expenditures and repairs [R. Vol. I at 248]. Appraisers must also be "competent and impartial" [R. Vol. I at 250]. "[P]rocedures" that "help to ensure 'due process and fair notice' . . . are . . . supported by the policy language requiring the appraisers to be 'competent and impartial.'" *Summit Park Townhome Ass'n*, 129 F.Supp.3d at 1152.[48]

Marbella's arguments in response below missed Empire's point. For example, Marbella argued that due process was not triggered because appraisal pertained to a private contract, not governmental action [R. Vol. III at 527]. But Empire's argument is not that due process is implicated by the appraisal provision itself. Rather, it is that *a court's* intervention, compelling of appraisal and forcing one of the parties to

---

[47] *See also Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (same); *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1279 (11th Cir. 2015) (noting undefined ACV deducts depreciation value based on *Trinidad*). ACV excludes matching costs. *Vasquez v. Citizens Property Ins. Corp.,* 304 So. 3d 1280, 1283 (Fla. 3d DCA 2020).

[48] The lower court is required to disregard improper award calculations or amounts not owed. *Cf., e.g., Ford v. American Security Ins. Co.*, No. 1:19-cv-20223-JLK, 2019 WL 6609239, at *3 (S.D. Fla. Dec. 5, 2019) (reducing award by subtracting prior payments and granting summary judgment to insurer); *Allen v. Amica Mutual Ins. Co.*, No. 1:12-cv-49, 2013 WL 11927705, at *6 (N.D. Ga. Feb. 28, 2013) (RCV component of appraisal award not owed absent completed repairs).

perform for the other, constitutes governmental action that *itself* triggers minimal due process [R. Vol. III at 512-14]. It also constitutes an exercise of jurisdiction that comes with inherent and rule-based powers to tailor the injunctive relief of compelling appraisal, aside from due process. This is why Marbella's insistence that Empire drafted the appraisal provision is not relevant [R. Vol. III at 528]: it is not the appraisal provision that is deficient or vague, but the lower court's procedure in compelling its performance is insufficient and will force both parties to the proverbial dark room with no assurances that basic Policy and other fairness requirements are observed. Thus, the parade of horribles feared by Marbella should the Court agree with Empire is beside the point [R. Vol. III at 528].

In sum, despite its authority to impart itemization, ACV or RCV calculation instructions, and other guidelines, the court below refused to even consider doing so, whether as a matter of tailoring specific performance, its inherent powers, or due process. Instead, the court concluded it lacked such power and that exercising it would rewrite the Policy. Respectfully, this was erroneous as a matter of law, not just discretion.

## CONCLUSION

Empire respectfully asks this Court to reverse the Honorable District Court Judge's appraisal order and remand for further proceedings.

BUTLER WEIHMULLER KATZ CRAIG LLP

*s/Christian Lee Gonzalez-Rivera*

J. PABLO CÁCERES, ESQ.
Florida Bar No.: 131229
pcaceres@butler.legal
CHRISTIAN GONZÁLEZ-RIVERA, ESQ.
Florida Bar No. 1020707
cgonzalez-rivera@butler.lega1
400 N. Ashley Drive, Suite 2300
Tampa, Florida 33602
Telephone: (813) 281-1900
Facsimile: (813) 281-0900
*Counsel for Empire Indemnity Insurance Company*

51

## CERTIFICATE OF COMPLIANCE

Appellants brief complies with the word and page limits of the Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding all parts of the document exempted by rule 32(f), this document contains 12,021 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in size 14 font.

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record on August 12, 2022, via the CM/ECF system.

/s/ *Christian Lee Gonzalez-Rivera*
CHRISTIAN L. GONZALEZ-RIVERA